IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEANNE DIGAN, | ) | |
| | ) | |
|     Plaintiff and Counter-Defendant, | ) | |
| | ) | |
| v. | ) | No. 10 C 799 |
| | ) | Magistrate Judge Nan R. Nolan |
| EURO-AMERICAN BRANDS, LLC, | ) | |
| | ) | |
|     Defendant and Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leanne Digan (Digan) has sued her former employer, Euro-American Brands, LLC (EAB), claiming disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and retaliatory discharge for exercising her rights under the Illinois Workers' Compensation Act. On January 31, 2012, the discovery deadline, Digan filed a motion to compel. The motion to compel is fully briefed, and dispositive motions are due by March 2, 2012. For the reasons and to the extent stated below, Digan's motion to compel [50] is granted in part and denied in part.

## BACKGROUND

EAB is an importer and distributor of confections and speciality foods from Europe. Digan was hired as EAB's Midwest Regional Sales Manager on April 25, 2005. Digan alleges that she suffered an on-the job-injury to her back in March 2008. Digan explains that she suffered two ruptured and herniated discs in her neck. EAB says Digan's last day of work was April 8, 2008. Around May 12, 2008, Digan underwent cervical spine surgery. Digan alleges that she was incapacitated and unable to return to work for four weeks after the surgery. Digan states that she eventually underwent three additional surgeries in December 2008, June 2009, and December 2012 for the ruptured and herniated discs. At some point, Digan filed a worker's compensation claim against EAB.

The parties dispute many of the events that followed Digan's May 2008 surgery. Digan alleges that in the weeks and months after a June 10, 2008 telephone conversation with her direct supervisor John Coles (Coles), she repeatedly requested to return to work with a reasonable accommodation of no lifting and no traveling. Digan says she was told not to return to work by Coles and her attempts to contact EAB owners Dite Vanclief (Vanclief) and Peter Leiendecker (Leiendecker) by telephone and email were unsuccessful. According to EAB, on July 15, 2008, Digan advised EAB that she was unable to return to work and that her doctor had prescribed four additional weeks of physical therapy. EAB says it agreed to extend Digan's leave-of-absence and Digan agreed to provide an update on her status by August 11, 2008. EAB states that Digan failed to provide an update on her medical status in August 2008, but EAB continued her in leave status and did not fill her sales position at that time. EAB further states that by November 2008, Digan had still not provided any information regarding the expected duration of her leave, including a return to work date. By email dated November 4, 2008, Digan's employment was terminated. EAB maintains that at no time during her leave did Digan communicate to EAB that she wished to return to work nor did she request a reasonable accommodation.

## DISCUSSION

### A. Local Rule 37.2

EAB first argues that Digan's motion to compel should be summarily denied for failing to comply with the meet and confer requirements of Local Rule 37.2. Local Rule 37.2 provides that a court will refuse to hear a discovery motion unless the moving party states that it consulted in person or by phone with the opposing party and made good faith attempts to resolve differences, providing the date, time, and place of such conference as well as the names of the participating attorneys. Even if counsel in this case did not hold a telephonic conference or meet in person, the correspondence attached to Digan's motion to compel reflects a sufficient effort to resolve the discovery disputes without court intervention. Given that discovery has closed and the imminent dispositive motion deadline, the Court exercises it discretion to excuse strict compliance with Local

Rule 37.2 and proceeds to consider the merits of Digan's motion. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir.1995) (stating "decision whether to apply [a local] rule strictly or to overlook any transgression is one left to the district court's discretion.").

**B.     Waiver**

EAB next contends that Digan has waived her arguments by failing to sufficiently explain the legal relevance of the discovery she seeks and failing to cite a single case in support of her arguments. EAB is correct in noting that the Seventh Circuit has repeatedly recognized that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." Weinstein v. Schwartz, 422 F.3d 476, 577 n.1 (7th Cir. 2005). It is also true that a court "has no duty to research and construct legal arguments available to a party, especially when he is represented by counsel." Tyler v. Runyon, 70 F.3d 458, 466 (7th Cir. 1995). However, "[e]ven a 'woefully underdeveloped' argument is not necessarily forfeited when the district court knew and understood the argument the party intended to make." U.S. v. Fields, 2010 WL 1725060, at *2 (7th Cir. 2010). Because this Court prefers to decide issues on the merits to the extent it is possible, it declines to exercise its discretion to deem the entirety of Digan's arguments waived. The Court will consider her arguments to the extent the Court is able to discern them.

**C.     Discovery Disputes**

In her motion, Digan seeks to compel answers to her Interrogatory Nos. 4, 5, 11, and 12 and documents responsive to Request to Inspect Document No. 20. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Upon a showing of good cause, a court may order "discovery of any matter relevant to the subject matter involved in the action." A court shall limit discovery if it determines the discovery sought to be unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or that the burden or expense of the proposed discovery outweighs its likely

benefit. Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). Magistrate judges are granted broad discretion in addressing and resolving discovery disputes. <u>Weeks v. Samsung Heavey Indus., Co., Ltd.</u>, 126 F.3d 926, 943 (7th Cir. 1997). With these familiar standards in mind, the Court turns to the specific contested discovery requests.

### 1.     Interrogatory No. 4

Interrogatory No. 4 asks EAB to:

> Described the email and other electronic-communications system(s) used within the scope of their employment by Dite Vanclief, Peter Leiendecker, John Coles, and Joe Snyder from January 1, 2005 through December 31, 2010, including, but not limited to, the type of e-mail, electronic-communications, and network systems, the person(s) responsible for the operation, maintenance, expansion, backup, and upkeep of those e-mail and other electronic-communications system(s), the frequency of, retention of, and destruction of system-wide and desktop backups for those e-mail and other electronic-communications system(s), and any disaster recovery plans for those e-mail and other electronic-communication system(s).

EAB objected to Interrogatory No. 4's request for disaster recovery plan information on the basis of the proprietary nature of the information as well as on the ground of irrelevancy. Without waiving its objection, EAB answered as follows:

> [F]rom January 1, 2005 to December 31, 2010, employees of EAB have used a Dell computer system. All EAB employees are connected to the Company's shared file server, and use Microsoft Outlook operating system for email and other electronic communications. This program is a personal management system and each employee-user is responsible for the retention and/or destruction of their email and other electronic communications. Emails are not stored on the Company's shared file server and EAB does not have a retention/destruction policy or practice. EAB utilizes Dell's system support personnel for maintenance, expansion, and any other support issues.

Digan fails to show how EAB's answer is deficient. Digan sought a description of "the frequency of, retention of, and destruction of system-wide and desktop backups" for EAB's email system, which EAB provided. EAB's answer adequately explains that: (1) EAB has no formal document retention/destruction policy or practice; (2) emails are not stored on the company's server; and (3) each employee-user is responsible for retention and/or destruction of his or her Outlook email. Digan does not specify what additional information she seeks. Therefore, EAB's answer to Interrogatory No. 4 is deemed sufficient, and Digan's motion to compel is denied in this regard.

2. **Interrogatory No. 5**

Digan's Interrogatory No. 5 requests a description of all efforts made by EAB "to locate and produce the e-mails and other electronic communications requested to be inspected in Plaintiff's Requests to Inspect Documents and Premises." EAB answered: "EAB has made a search of its files and electronically stored data for all communications pertaining to plaintiff." EAB contends that its answer is sufficient because it stated: (1) that a search was made, (2) what was searched, and (3) for what subject mater and terms the company searched. The Court finds EAB's answer to Interrogatory No. 5 inadequate because it does not describe its search for responsive electronic communications with sufficient particularity. EAB describes its efforts to locate responsive electronic communications only in the most general terms. Digan is entitled to some additional detail to enable her to determine whether EAB's search was adequate. Accordingly, EAB shall describe with greater specificity its efforts to locate electronic communications responsive to Digan's requests, including identifying the persons whose files and electronically stored data were searched and the terms EAB searched.

3. **Interrogatory No. 11**

Interrogatory No. 11 states: "List all employees of defendant-counterplaintiff who have suffered on-the-job injuries at any time from 2005 to the date." For each employee, Digan sought the position title, the date of employment, employment status, and whether the employee filed a worker's compensation claim against EAB. In response, EAB answered: "See General Objections Nos. 2 and 5. Defendant further objects to this Interrogatory on the ground that it is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence." Digan's motion argues that the discovery regarding other employees who suffered on-the-job injuries is relevant because it may reveal a pattern and practice of retaliating against such individuals. EAB responds that the information Digan seeks is not relevant because her complaint does not contain a pattern and practice claim nor a disparate treatment claim.

<> Because Interrogatory No. 11 seeks information relevant to Digan's claim of retaliatory discharge in the workers' compensation context, EAB's objections to Interrogatory No. 11 are overruled. To prevail on her workers' compensation retaliation claim, Digan must prove: (1) that she was EAB's employee before her injury; (2) that she exercised a right granted by the Workers' Compensation Act; and (3) that she was discharged from her employment with a causal connection to her filing a workers' compensation claim. McCoy v. Maytag Corp., 495 F.3d 515, 521 (7th Cir. 2007). "[T]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 767 (7th Cir. 1994). EAB's general policy and practice with respect to workers' compensation filers is relevant to a consideration of pretext. Id. at 770 n.8 (stating a policy or practice of terminating or otherwise mistreating workers' compensation filers could demonstrate that the employer's stated reason for discharge was a pretext); see also McDonnell Douglas, 411 U.S. 792, 804-05 (1973). Digan's lack of a pattern and practice claim is not fatal to her discovery request because acts of retaliation against other workers' compensation claimants may be relevant to Digan's individual retaliation claim. See Van Antwerp v. City of Peoria, 627 F.3d 295, 298 (7th Cir. 2010) (holding circumstantial evidence of discrimination may include behavior toward other employees in the protected group); Bell v. E.P.A., 232 F.3d 546, 55 (7th Cir. 2000) (stating "evidence of systemic discrimination is relevant to and probative of the issue of pretext even when it is insufficient to support a pattern and practice disparate treatment case."). In addition, Digan may establish that EAB's stated reason for her termination was pretextual by showing that employees who suffered on-the-job injuries and did not file a worker's compensation claim who were involved in acts of comparable seriousness were nevertheless retained while Digan was not. Hiatt, 26 F.3d at 770.

    4.     **Interrogatory No. 12**

Digan's Interrogatory No. 12 reads as follows: "Describe all actions taken by [EAB] from January 1, 2008 to the date these Interrogatories were served to prevent employment discrimination and retaliation in the workplace." EAB answered Interrogatory No. 12 as follows: "See General

Objections Nos. 2 and 5. Defendant further objects to this Interrogatory on the ground that it is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence."

The information Digan seeks in Interrogatory No. 12 is relevant to assessing her claim for punitive damages. Punitive damages are available on Digan's claim for disability discrimination under the ADA (as opposed to her ADA retaliation claim). Kramer v. Banc of America Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004). An employer may avoid liability for punitive damages if it "can show that it engaged in good faith efforts to implement an antidiscrimination policy." E.E.O.C. v. Management Hospitality of Racine, Inc., 666 F.3d 422, 438 (7th Cir. 2012). "[T]he implementation of a written or formal antidiscrimination policy is relevant to evaluating an employer's good faith efforts at [ADA] compliance." Burso v. United Airlines, Inc., 239 F.3d 848, 858 (7th Cir. 2001); see also Brunker v. Schwan's Home Service, Inc., 583 F.3d 1004, 1010 (7th Cir. 2009) (holding information about employer's anti-discrimination training was relevant to punitive damages in a disability-discrimination case); Seventh Circuit Pattern Civil Jury Instruction No. 4.14 (instructing jury not to "award Plaintiff punitive damages if Defendant proves that it made a good faith effort to implement an anti-discrimination policy."). Because Digan has not explained how EAB's efforts to implement and enforce an antidiscrimination policy after her termination on November 4, 2008 is relevant to her claim for punitive damages, the Court sustains EAB's relevancy objection to actions taken by it subsequent to Digan's termination. The Court finds that Interrogatory No. 12 should be limited to Digan's period of employment (May 2005 to November 2008). With this limitation, Digan's motion to compel is granted with regard to Interrogatory No. 12.

**5.      Document Request No. 20**

In Document Request No. 20, Digan seeks to obtain the "personnel records and employment records" of Vanclief (President and an owner of EAB), Leiendecker (the CEO and an owner of EAB), Coles (Digan's direct supervisor at the time of her termination), and Joe Snyder (Digan's former supervisor). Digan states that she does not seek any medical files required by the ADA to be kept

separately. EAB's response states: "See General Objections D and G. Defendant further objects to this Request to the extent that it seeks disclosure of documents unrelated to the events at issue in this action and which are neither relevant to the subject matter of the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence."

In her motion, Digan argues that the personnel files are relevant because (1) any incentive Ms. Digan's supervisors may have received to keep down medical and workers' compensation costs could be noted in their annual evaluations or in other documents in their personnel and employment records and (2) any severance agreements or similar contracts could show potential bias as a witness. EAB contends that the decisionmaker/supervisor personnel files are not relevant because Digan has not asserted a pattern and practice claim or disparate treatment claim. EAB also objects to producing salary, benefits, and "other personal information." Lastly, EAB suggests that Digan should have obtained the requested information through alternative means such as interrogatories, requests for specific documents as opposed to entire personnel files, or asking for the information at Vanclief's deposition on December 5, 2011.

Digan is entitled to discover the personnel files of the decisionmakers involved in her termination (Vanclief, Leiendecker, and Coles). Byers v. Illinois State Police, 2002 WL 1264004, at *13 (N.D. Ill. June 3, 2002); Sykes v. Target, 2002 WL 554505, at *4 (N.D. Ill. April 15, 2002). EAB's argument that Digan does not have a disparate treatment claim is curious because Count III of Digan's complaint for disability discrimination appears to allege disparate treatment and EAB has analyzed Count III as a disparate treatment claim and failure to accommodate claim in its summary judgment motion. (Doc. 69 at 11-29). EAB's objection to producing the decisionmakers' salary and benefits information is overruled. As potential witnesses for EAB, this information is relevant to these witnesses' possible bias. Digan is entitled to the information to prepare for possible cross-examination. EAB may, however, redact or withhold unlisted addresses and telephone numbers, social security numbers, martial status, medical and health insurance information, and credit information. Davis v. Precoat Metals, 2002 WL 1759828, at *4 (N.D. Ill. 2002). If EAB believes that

additional information contained in these personnel files should be withheld based on privacy concerns, EAB must provide Digan's counsel with a specific description of the withheld information. As to the personnel files of Vanclief, Leiendecker, and Coles, the Court declines to order a discovery method other than the one selected by Digan pursuant to Rule 26(c)(1)(C) because EAB did not move for a protective order in response to Digan's document request and good cause has not been shown to justify an alternative means of discovery.

Digan also seeks the personnel file of her former supervisor, Joe Snyder (Snyder). EAB states that Snyder was not employed by EAB at the time of the events relevant to this case, and Digan's complaint acknowledges that Snyder left EAB in approximately May of 2006. (Doc. 37 at ¶ 9). Because there has been no showing that Snyder was involved in the employment decisions at issue in this case, Digan is not entitled to discover Snyder's personnel file. The Court agrees with Digan that any severance agreement or other contract between Snyder and EAB reflecting payments made to Snyder may be relevant to his potential bias as a witness and should be produced.

## CONCLUSION

For these reasons, Plaintiff-Counterdefendant's Motion to Compel Production of Documents and Answers to Interrogatories [50] is granted in part and denied in part. EAB shall comply with this Opinion by March 12, 2012.

E N T E R:

*Nan R. Nolan*
_____
**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: February 29, 2012**