LEANNE M. DIGAN,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )
                                   )   Case No. 10-CV-799
EURO-AMERICAN BRANDS, LLC,         )
                                   )   Judge John W. Darrah
            Defendant.             )
                                   )
                                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Leanne M. Digan is a former employee of Defendant,

Euro-American Brands, LLC. On February 5, 2010, Plaintiff filed suit against

Defendant, alleging discrimination and retaliation on the part of Defendant due to her

disability. Defendant filed a motion to dismiss the complaint for lack of jurisdiction; this

motion was denied on August 19, 2010. Defendant then filed an answer and included a

counterclaim, alleging Plaintiff breached a contract between her and Defendant. Plaintiff

filed an amended complaint on May 5, 2011. The Amended Complaint alleges: (I)

retaliation by the Defendant because Plaintiff filed a workers' compensation claim

pursuant to the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.*; (II)

Defendant's retaliation against Plaintiff in violation of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and (III) Defendant's discrimination against

Plaintiff in violation of the ADA. Defendant has filed a motion for summary judgment,

seeking dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56 and

granting of summary judgment in favor of Defendant on its breach-of-contract counterclaim.

For the reasons set forth below, the Motion for Summary Judgment is granted.

## BACKGROUND

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. Rule 56.1 requires statements of facts to consist of short, numbered paragraphs. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005).

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff is a former employee of

Defendant, a New Jersey limited liability company with its principal place of business in Paramus, New Jersey. (Def.'s 56.1(a)(3) Statement ¶ 3.) Plaintiff resided and worked for Defendant in the Northern District of Illinois. (*Id.*, ¶ 5.) Defendant imported and distributed European goods.[1] At the time of Plaintiff's employment, Defendant had approximately twenty employees. (*Id.*, ¶ 12.) Defendant had two sales divisions. (*Id.*, ¶ 13.) The civilian division encompassed three regions (western, central, and eastern), and each region has its own Sales Manager. (*Id.*) The military division had four regional Sales Managers. (*Id.*) Each Sales Manager lives in his or her respective region. (*Id.*)

Plaintiff was hired in May 2005 to be Defendant's Midwest Regional Sales Manager. (*Id.*, ¶ 14.) This region included Minnesota, the Dakotas, south to Texas, including Michigan, Indiana, Ohio, Colorado, Wisconsin, and Missouri. (*Id.*) Plaintiff worked out of her home in Brookfield, Illinois, in this role. (*Id.*) The role of Regional Sales Manager required periodic travel and also required the Sales Manager to make sales calls on customers, brokers, and distributors throughout the Sales Region. (*Id.*, ¶ 15.) Plaintiff spent approximately 35 percent of her time outside her office in her home, visiting customers and traveling for work up to 4 days a week. (*Id.*, ¶ 16.) If a customer was located within 300 miles of her home, she often drove to visit them; she would also fly to see more remote customers. (*Id.*) Plaintiff was also required to travel to Defendant's New Jersey offices for sales meetings and performance reviews. (*Id.*, ¶ 17.) Plaintiff's position required travel to various locations out of state to attend national

---

[1] A court may take judicial notice of a fact not subject to reasonable dispute in that it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

industry trade shows. (*Id.*, ¶ 18.) Plaintiff's position as Regional Sales Manager also required some lifting: she received shipments of product samples and sales materials in her home office, boxed and shipped these products, picked up, and delivered products to customers and brokers. (*Id.*, ¶ 19.) Additionally, Plaintiff had to lift and move sales-related items like product displays, product samples, and other display items used in trade shows; some of the items Plaintiff would lift or move weighed between twenty-five and thirty-five pounds. (*Id.*, ¶ 20.) At trade shows, Plaintiff was required to take delivery of product samples, set up the booth and its display cases. (*Id.*, ¶ 21.) This required her to lift product samples and sales materials. (*Id.*) Plaintiff's immediate supervisor as of February 15, 2008, was John Coles; she was instructed to report directly to Coles. (*Id.*, ¶ 23.) While Plaintiff was employed by Defendant, she received raises in her salary. (Pl.'s 56.1(b)(3)(C) Statement ¶ 3.)

During the course of Plaintiff's employment with Defendant, she was reimbursed for business-related expenses. (Def.'s 56.1(a)(3) Statement ¶ 66.) To prevent Plaintiff from having her own funds tied up while waiting for reimbursements, Defendant gave her cash advances on two occasions. (*Id.*, ¶ 67.) Defendant gave Plaintiff a check on May 13, 2005, for $3,000, and another check on July 7, 2007, for $2,000. (*Id.*) At the time the cash advance checks were issued to Plaintiff, Defendant indicated that "this advance will continue to remain on our books until your final expense report. At that time it will be applied, and your check will be reduced." (*Id.*, ¶ 68.) In late 2007, Defendant gave Plaintiff a company credit card to charge business-related expenses and informed her she had to pay back her advances. (*Id.*, ¶ 69.) Plaintiff agreed and began making monthly

payments to satisfy the debt owed from the cash advances. (*Id.*, ¶ 69.) Plaintiff still owes money on these advances but believes she is not obligated to pay it back. (*Id.*, ¶ 71.)

In late March of 2008, Plaintiff was injured while working in her home office while moving boxes of sales samples, weighing approximately eighteen pounds. (*Id.*, ¶ 24.) Approximately two weeks later, Plaintiff awoke with severe shoulder pain; she was taken to the emergency room and diagnosed with two ruptured and herniated disks in her neck. (Pl.'s 56.1(b)(3)(C) Statement ¶ 7.) Plaintiff informed her supervisor, John Coles, of her injury. (*Id.*, ¶ 6.) Upon learning of the injury, Defendant contacted its workers' compensation carrier, Chubb Insurance Group, which opened a workers' compensation claim for Plaintiff. (*Id.*, ¶ 25.) Plaintiff's last day of work for Defendant was April 8, 2008; following that, she received disability payments from Defendant's workers' compensation insurance until August 27, 2010. (*Id.*)

Plaintiff began receiving treatment for her injury on April 14, 2008; Dr. Ghanayem of Loyola University Medical Center diagnosed her with a herniated disk. (*Id.*, ¶ 26.) Plaintiff was prescribed physical therapy, and Dr. Ghanayem's chart note indicated that Plaintiff is "effectively off work." (*Id.*) The doctor gave Plaintiff a signed note, stating she was "off work start 4/10/08 until further notice;" Plaintiff sent this note to Defendant and indicated that she would remain in regular contact with Coles, her supervisor. (*Id.*, ¶ 27.) Plaintiff visited Dr. Ghanayem on April 23, 2008; after assessing her progress and continuing her prescribed physical therapy, the doctor noted, "she remains off work." (*Id.*, ¶ 28.) That same day, Plaintiff sent Defendant another signed note from the doctor, which indicated she was "off work." (*Id.*, ¶ 29.) At her next

doctor's visit on May 7, 2008, the doctor determined Plaintiff had made little progress and recommended surgery; his chart note stated Plaintiff "is to remain off work." (*Id.* ¶ 30.)

Plaintiff advised Defendant and insurance carrier Chubb that she had surgery scheduled for May 12, 2008, and that her recovery would take four to six weeks; Defendant placed Plaintiff on a leave of absence and held her job open for her. (*Id.*, ¶ 31.) Plaintiff underwent surgery on her disks on May 12, 2008. (*Id.*, ¶ 32.) Following the surgery, Plaintiff was restricted from working, lifting more than five pounds, driving, traveling, and typing for more than one hour at a time without a break. (*Id.*) On June 10, 2008, Plaintiff was in contact with Coles and requested some work she could do from home, such as "telephone work, office work, paper work for other employees." (*Id.*, ¶ 51.) She also sought to resume working in her usual role for Defendant, provided she did no traveling or lifting. (Pl.'s 56.1(b)(3)(C) Statement ¶ 14.) Plaintiff was told by Coles that the Defendant did not want her to do any work. (Def.'s 56.1(a)(3) Statement ¶ 51.) Plaintiff further informed Coles that the restrictions necessary for her to return to work would include no travel, no heavy lifting, and no carrying of product samples; at the time Plaintiff informed Coles of these restrictions, she did not know how long they would be necessary. (*Id.*, ¶ 52.) At Plaintiff's first appointment with her doctor after the operation, on June 11, 2008, the doctor prescribed more physical therapy and noted Plaintiff was to "remain off work." (*Id.*, ¶ 34.) The next day, Plaintiff sent a note to Chubb from her doctor, which stated she was to remain off work; Chubb informed Defendant of this. (*Id.*, ¶ 35.)

Since Plaintiff's injury, and throughout her treatment and recovery, Chubb was apprised of Plaintiff's medical progress through Chubb's representative, Cynthia Cureton-Taylor, who received information from Plaintiff, her doctors, or Plaintiff's Nurse Care Manager. (*Id.*, ¶ 36.) The Nurse Care Manager was employed by Chubb and assisted Chubb in managing Plaintiff's treatments; the Nurse Care Manager would sometimes attend Plaintiff's doctor appointments. (*Id.*) Defendant was informed of Plaintiff's medical progress directly by Plaintiff or by Chubb representative Cureton-Taylor. (*Id.*, ¶ 37.)

Plaintiff again saw Dr. Ghanayem on July 11, 2008; he prescribed continued physical therapy and noted Plaintiff should visit him in one month and was to "remain off work." (*Id.*, ¶ 38.) Plaintiff forwarded to Chubb a signed note from Dr. Ghanayem that she was to remain off work and informed Chubb that she had an appointment scheduled with Dr. Ghanayem on August 13, 2008, as well as an appointment with Dr. Tonino on August 4, 2008. (*Id.*, ¶ 39.) Chubb advised Defendant of this. (*Id.*) On July 14, 2008, Plaintiff spoke to her supervisor, John Coles, and informed Coles that she was to continue physical therapy and visit her doctor again in one month; she did not otherwise advise Coles of her prognosis or recovery. (*Id.*, ¶ 40.) Plaintiff also attempted to contact Defendant's owners by phone but never received calls back from them. (Pl.'s 56.1(b)(3)(C) Statement ¶¶ 18-19.) Direct communication between Plaintiff and Defendant ceased at some point in early August 2008. (Def.'s 56.1(a)(3) Statement ¶ 41.)

Plaintiff had her next visit with Dr. Ghanayem on August 13, 2008; the doctor prescribed continued physical therapy, an evaluation by Dr. Tonino regarding a related

shoulder injury, and that Plaintiff was to "remain off work." (*Id.*, ¶ 42.) Dr. Ghanayem

also provided Plaintiff with a signed letter, dated August 19, 2008, stating Plaintiff "is to

remain off work until her follow up appointment with me on 9-12-08. Work status will

be reevaluated at that appointment." (*Id.* ¶ 43.) Plaintiff sent a copy of this letter to

Chubb, who, in turn, advised Defendant. (*Id.*) At Plaintiff's visit a month later, Dr.

Ghanayem noted that shoulder surgery was a possibility and indicated that Plaintiff

should "remain off work and see [me] in a month's time." (*Id.*, ¶ 44.) Plaintiff again

advised Chubb of this; Chubb then updated Defendant. (*Id.*) On September 18, 2008,

Dr. Tonino scheduled Plaintiff's shoulder surgery for December 3, 2008. (*Id.*, ¶ 45.) In

September, Coles contacted Plaintiff and attempted to communicate with Plaintiff about

her medical status; Plaintiff stated, "I have received your messages, however, I think it

would be best if we did not discuss my medical progress in detail anymore." (*Id.*, ¶ 46.)

On October 10, 2008, Dr. Ghanayem saw Plaintiff, diagnosed her with carpel tunnel, and

advised her "to remain off work." (*Id.*, ¶ 47.) Chubb and Defendant learned of this, as

well as Plaintiff's additional shoulder surgery. (*Id.*)

By November 2008, Plaintiff had not worked for Defendant for approximately

seven months, and it was unclear if and when Plaintiff would be able to work again. (*Id.*,

¶ 48.) With this in mind, Defendant concluded it could not go into another year without

someone managing Plaintiff's sales region and visiting its customers in that region. (*Id.*,

¶ 49.) Defendant terminated Plaintiff's employment by email on November 4, 2008.

Plaintiff had shoulder surgery in December 2008. (*Id.*, ¶ 55.) In February 2009,

Plaintiff completed a questionnaire in connection with her Equal Employment

Opportunity Commission ("EEOC") Charge of Discrimination: Plaintiff indicated that she was still undergoing treatment and that there were "no indications yet of limitations or if permanent." (*Id.*, ¶ 64.) Plaintiff's next visit with Dr. Ghanayem was on June 17, 2009; the doctor indicated that due to her ongoing injuries, she was to remain off work. (*Id.*, ¶ 56.) Plaintiff had another surgery on July 7, 2009. (*Id.*) At her appointment with Dr. Ghanayem in August 2009, the doctor indicated she was to have physical therapy and remain off work. (*Id.*, ¶ 57.) At her September 2009 visit with Dr. Ghanayem, he again indicated that she was to remain off work. (*Id.*, ¶ 59.) On December 9, 2009, over a year after being terminated by Defendant, Plaintiff received a note from Dr. Ghanayem which stated Plaintiff "may return to light office work, 15 pound lifting restriction, no overhead activity, ergonomic work station." (*Id.*, ¶ 60.)

Plaintiff did not attempt to seek new employment until March 2010, in part because she still had medical restrictions in place from two other doctors. (*Id.*, ¶¶ 54, 61-62.) Plaintiff applied for Social Security Disability benefits in January 2010 and indicated that she was unable to work because of the injury she incurred on March 25, 2008; Plaintiff stated that she was still disabled. (*Id.*, ¶ 65.) In August 2010, Plaintiff began working for another employer; Plaintiff describes her new position as exactly the same as her previous position with Defendant. (*Id.*, ¶ 63.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Based on the analysis below, Defendant's Motion for Summary Judgment is granted against Plaintiff as to Counts I, II, and III of Plaintiff's Amended Complaint and in favor of Defendant on Defendant's Counterclaim.

*Disability Discrimination*

"The ADA makes it unlawful for an employer to 'discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment.'" *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 688 (7th Cir. 2010) (quoting 42 U.S.C. § 12112(a)).  To survive summary judgment on her claim of disability discrimination under the ADA, Plaintiff must show that there is a genuine issue of material fact as to whether:  (1) she is disabled; (2) she is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) she was terminated because of her disability.  *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008) (*Lee's Log Cabin*).  "The determination as to whether an individual is [disabled] must be made as of the time of the employment decision." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996).

## Plaintiff's Disability

Defendant first argues that Plaintiff was not disabled under the ADA definition. Under the ADA, an individual has a disability where she has:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).  The act goes on to define major life activities as including, but not limited to:  "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A)(1).[2]
The ADA seeks to define the disability of an individual broadly. 42 U.S.C. §
12102(4)(1)(A). "To meet the definition of disability, [Plaintiff] must also show that her
physical impairment substantially limits a major life activity." *Serednyj v. Beverly
Healthcare, LLC*, 656 F.3d 540, 554 (7th Cir. 2011) (*Serednyj*). Plaintiff argues that the
back injuries like the ones she suffered should be considered disabilities because of the
"severity" of her injuries. (Pl.'s Resp. at 12.)

To determine if a disability "substantially limits" a person from performing a
major life activity, a court considers: "'the nature and severity of the impairment; the
duration or expected duration of the impairment; and the permanent or long term impact,
or the expected permanent or long term impact of or resulting from the impairment.'"
*Serednyj*, 656 F.3d at 554 (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th
Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(iii))). Of particular importance is the
duration of restrictions on life activities: where a restriction is short-term or temporary, a
person is not considered disabled under the ADA. *Id.* Here, Plaintiff was injured in
March 2008 and diagnosed with a herniated disk in May 2008. From the time of her
injury until her termination in November 2008, Plaintiff was not supposed to travel and
was "off work." Because Plaintiff was unable to travel, she was unable to perform her
job with Defendant, which, as Plaintiff admits, involved traveling for work. However,
after additional treatment, Plaintiff was able to be employed by another company in 2010,

---

[2] Note that "lifting" was added to the definition of major life activities by the
ADA Amendments Act of 2008, which went into effect on January 1, 2009. *Powers v.
USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011). The law is applied as it was in
effect at the time of the underlying incidents. *Id.*

where she performs "exactly the same [work as her] previous job" with Defendant. It is clear Plaintiff's injury did not cause long-term impairment.

In order for Plaintiff to demonstrate she was disabled, she must also show that her back injury caused a substantial limitation of a life activity – here, working. However, Plaintiff must do more than simply demonstrate she was unable to perform her job with Defendant; rather, she must show she is unable to work in a "broad range of jobs." *E.E.O.C. v. Schneider National, Inc.*, 481 F.3d 507, 511 (7th Cir. 2007) (citing *Toyota Motor Mfg. Inc. v. Williams*, 534 U.S. 184, 200 (2002)). Plaintiff's injury prevented her from traveling, which was a requirement of her position with Defendant. However, Plaintiff's injury did not prevent her from working *any* job; "[a] demonstrated inability to perform a single, particular job does not render an individual substantially limited in the major life activity of working." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)). Plaintiff's injury prevented her from being able to perform her job with Defendant but did not render her unable to work at all; therefore, for purposes of the ADA, Plaintiff was not disabled. No genuine issue of material fact remains as to whether Plaintiff was disabled.

### Essential Job Functions and Reasonable Accommodations

Even if Plaintiff could establish a genuine dispute as to whether she was disabled under the ADA, which, based on the above analysis, she cannot, Plaintiff must also show that there is a genuine issue of material fact as to whether or not she was, at the time of her employment, qualified to perform the essential function of her job as Regional Sales Manager either with or without reasonable accommodation. *Lee's Log Cabin,* 546 F.3d

13

at 442. Plaintiff contends she could have performed her job had Defendant provided her with the accommodations of not requiring her to lift or travel. (Pl.'s Resp. at 2.) However, Plaintiff cannot show that with supposedly reasonable accommodations, she could have performed the essential functions of her job. "To determine the essential functions of a position, a court may consider, but is not limited to, evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). The employer has discretion in describing essential job requirements. *Id.* at 928. Plaintiff's role as Regional Sales Manager required her to travel to customers, brokers, and distributors to cultivate relationships and also required her to travel to national trade shows: this was required of *all* Sales Managers. Plaintiff estimated approximately 65 percent of her time was spent working out of her home office; the rest of her employment time was spent traveling either by automobile or commercial airlines, visiting customers and attending shows and conferences. Defendant's Regional Sales Managers, including Plaintiff, were also required to do some lifting, including lifting and transporting product samples and product displays used for trade shows. Both traveling and handling and lifting were essential functions of Plaintiff's role as a Regional Sales Manager.

Plaintiff argues she could have remained in this role had she been provided reasonable accommodations and been permitted to work from home and not travel. However, based on the foregoing, requiring Defendant to create this accommodation for

Plaintiff would have been unreasonable and unduly burdensome on Defendant. If Defendant were to implement such an accommodation, it would be, in effect, creating a new employment role for Plaintiff, which would eliminate the essential function of travel from her job. "[A] worker has no claim under the ADA if she, even with a reasonable accommodation, cannot do the job for which she was hired." *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 674 (7th Cir. 1998). An essential component of the job of Regional Sales Manager is traveling to personally interact with customers, brokers, and distributors to build relationships. Plaintiff's request for an accommodation that would exclude travel cannot be said to be reasonable. Defendant is not required as an employer to change an essential job function (like the traveling required of a Regional Sales Manager) to accommodate an employee. *See Dvorak v. Mostardi Platt Ass., Inc.*, 289 F.3d 479, 484 (7th Cir. 2002) (affirming summary judgment in favor of employer and stating:

> [Plaintiff] would have great trouble reaching the jury on the issue whether he could perform the job without accommodation. However vague his official job description might have been, it is clear from the record that it required a significant degree of field work and mobility. [Plaintiff] claimed that he no longer possessed the physical ability to perform those functions. His later position that he could have completed all his "essential duties" with a desk position accommodation is of no avail. **Under the ADA, an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee.**) (emphasis added).

Thus, Defendant is not required to modify or reduce an essential function of Plaintiff's position as a Regional Sales Manager.

Defendant permitted Plaintiff to be absent from her employment for seven months, but Defendant was not required to keep Plaintiff on a leave of absence indefinitely. *See Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) (holding "[Plaintiff] has not demonstrated what more [Defendant] could reasonably have done to accommodate her short of creating an entirely new position for her and waiting indefinitely for her to return to work. For good reason, the ADA makes no such requirement of an employer.").

Therefore, there is no genuine issue of material fact as to whether or not Plaintiff could perform the essential job function of traveling with or without reasonable accommodation: the second element of a *prima facie* disability claim under the ADA.

### Cause of Termination

Finally, in order to survive summary judgment, Plaintiff must show that there is an issue of material fact as to whether or not Plaintiff was terminated because of her disability. Even if Plaintiff were able to show these other two elements discussed above, she cannot show Defendant terminated Plaintiff because of her alleged disability. *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (*Dickerson*).

Using the direct method to prove disability discrimination[3], a plaintiff may present either direct or circumstantial evidence to survive a motion for summary judgment. *Id.* Direct evidence is difficult to prove, as it requires showing that the

---

[3] Because Plaintiff attempts to prove this only by the direct method, it is unnecessary to analyze if Plaintiff might have been able to prove discriminatory termination by the indirect method of proof.

employer admits it terminated the plaintiff for a discriminatory reason. *Id.* "The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.*

Plaintiff alleges that there is circumstantial evidence which would show that Defendant terminated Plaintiff for discriminatory reasons. In particular, Plaintiff argues that she was praised and received raises prior to her injury but that, after her injury, she received neither praise nor salary raises. (Pl.'s Resp. at 7.) Plaintiff also alleges Defendant ignored her requests to perform work from home. (*Id.*) These examples are unsupported by the record and, even if that were not the case, would not be sufficient to survive Defendant's summary judgment motion. As explained above, Defendant has provided a valid, non-discriminatory basis for its termination of Plaintiff, namely, that she could not perform an essential function of her position as Regional Sales Manager. The burden shifts back to Plaintiff, who "must then demonstrate that the defendant's proffered reason was pretextual." *Dickerson*, 657 F.3d at 602. Plaintiff does not, and cannot, show that Defendant terminated her for an invalid or pretextual reason. Defendant was advised that Plaintiff was medically restricted from working. Defendant relied on this; and, after waiting months with no understanding of when, if at all, Plaintiff might return to work, Defendant terminated Plaintiff in order to continue operating its

business.  This is a valid and non-discriminatory reason for Plaintiff's termination.

Plaintiff cannot show that she was terminated because of her alleged disability or any

other discriminatory purpose.

Plaintiff fails to state a *prima facie* claim of discrimination under the ADA; and

therefore, Defendant's Motion for Summary Judgment is granted as to Count III of the

Amended Complaint.

*Retaliation under the ADA*

Count II of Plaintiff's Amended Complaint alleges, "Defendant, by the actions

and/or omissions alleged, retaliated against [Plaintiff] in violation of the [ADA]."  (Am.

Compl. ¶ 45.)  To survive a motion for summary judgment on an ADA retaliation claim,

a plaintiff "must offer evidence that [s]he engaged in protected activity, that [s]he was

performing h[er] job satisfactorily, and that [s]he was singled out for an adverse

employment action that similarly situated employees who did not engage in protected

activity did not suffer."  *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 200 (7th Cir.

2011).

As previously discussed, Plaintiff was not considered disabled under the ADA;

however, "Defendant is still prohibited from retaliating against her for raising a good

faith claim under the Act."  *Harris v. Proviso Area for Exceptional Children*, 581 F.Supp.

2d 942, 959 (N.D. Ill. 2008) (*Harris*).  It is unclear that Plaintiff's request for

accommodations, such as asking to do work from home despite her inability to travel, is

considered a statutorily-protected activity under the ADA.  *See Davis v. Chao*, No. 06-

CV-1066, 2008 WL 905184, at *14 (N.D. Ill. Mar. 31, 2008); *contra Harris*, 581 F.Supp.

2d at 959. It is undisputed that Plaintiff suffered an adverse employment action when she was terminated by Defendant.

Assuming, *arguendo*, Plaintiff engaged in a statutorily protected activity by requesting accommodations, Plaintiff must then show evidence she was terminated because of her request for accommodations. Plaintiff must show evidence of retaliation by the direct method or indirect method: she must demonstrate that there was a causal link between her protected activity of requesting accommodations and her termination. To prove this by the direct method, Plaintiff must show that she would not have been terminated but for her requesting accommodations.[4] *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 904 (7th Cir. 2005) (*Moser*) (citing *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002)). Plaintiff cannot show that because she sought accommodations, Defendant retaliated against her by firing her. To the contrary, Defendant continued to keep Plaintiff employed for several months after Plaintiff's first request for accommodation in June 2008. As previously discussed, Defendant was not obligated to create a new position for Plaintiff, or modify her position as a Regional Sales Manager, to excuse her from traveling for work. After waiting months, Defendant was informed that Plaintiff was to remain "off work" and could not travel, despite the fact that traveling was a required, essential component of her job. It was because of this

---

[4] Note Plaintiff does not seek to prove her retaliation claim by the indirect method, which would require her to show that "(1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Moser*, 406 F.3d at 903. Therefore, no analysis as to an indirect method of proof is necessary.

uncertainty and the disruption to Defendant's business that it terminated Plaintiff, not in retaliation against her because she requested to do "some work" from home.

Because Plaintiff presents no genuine issue of fact supporting a causal connection between Plaintiff's (potentially) protected activity of requesting accommodations and her termination, her claim of retaliation under the ADA must fail as a matter of law.[5] Defendant's Motion for Summary Judgment as to Count II of Plaintiff's Amended Complaint is granted.

### State-Law Retaliation Claim

Because summary judgment has been granted as to Plaintiff's federal law claims, Plaintiff's remaining state-law claim and Defendant's remaining counterclaim can be dismissed, with jurisdiction being relinquished back to state court. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). However, this rule is subject to three exceptions; a claim need not be relinquished back to state court: "when the refilling [sic] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Id.* Because any one of these exceptions may be applicable, Defendant's Motion for Summary Judgment as to the Illinois Workers' Compensation retaliation claim must be considered.

---

[5] In Plaintiff's Response in Opposition to the Motion for Summary Judgment, the primary argument Plaintiff makes in support of her retaliation claim is that the "claim only requires her to have had a good-faith belief that she was disabled." (Pl's Resp. at 12.) Plaintiff provides only two cases to support this position. However, neither case was issued by the Seventh Circuit, and, therefore, these cases lack binding precedential authority.

Plaintiff alleges in Count I of her Amended Complaint that Defendant violated Illinois' public policy, which seeks to prevent employer retaliation against employees who file workers' compensation benefits. (Am. Compl. ¶¶ 35-36.) "An employer may not . . . fire an employee to retaliate against her for her pursuit (or anticipated pursuit) of a workers' compensation claim." *Hunt v. DaVita, Inc.*, -- F.3d ---, No. 2012 WL 1560396, at *2 (7th Cir. 2012). To allege a retaliatory discharge claim and survive a motion for summary judgment, Plaintiff must show that a genuine issue of material fact exists as to whether or not her termination was causally linked to her filing a workers' compensation claim. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012). Plaintiff must show her termination was primarily motivated by the filing of her workers' compensation claim, and Plaintiff must "proffer[ ] sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated." *Id.* (quoting *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)). Plaintiff has failed to allege *any* facts which create an inference that Defendant terminated her because she filed a workers' compensation claim. The facts directly contradict this: Defendant actually assisted Plaintiff in opening a workers' compensation claim by notifying its workers' compensation insurance carrier soon after Plaintiff sustained her injury.

Moreover, Plaintiff cannot prove causation if "the employer has a valid basis, which is not pretextual, for discharging the employee." *Renteria v. Italia Foods, Inc.*, No. 02-CV-495, 2003 WL 21995190, at *7 (N.D. Ill. Aug. 21, 2003) (quoting *Hartlein v. Ill. Power Co.*, 151 Ill.2d 142, 160 (1992)). As previously discussed, Defendant had a legitimate, non-pretextual basis for terminating Plaintiff: she was unable to perform an

essential function of her job. Therefore, Defendant's motion for summary judgment as to Count I of Plaintiff's Amended Complaint is granted.

*Defendant's Counterclaim: Breach of Contract*

Finally, no genuine issue of material fact exists as to Defendant's Counterclaim regarding Plaintiff's breach of contract. Plaintiff entered into an agreement with Defendant, whereby Defendant would advance Plaintiff cash for business expenses, and Plaintiff would be required to pay back the advances until her debt was satisfied. At the time of Plaintiff's termination, she still owed Defendant $2,350.00 for the cash advances. Plaintiff has acknowledged that she still owes this debt to Defendant. Plaintiff has also failed to address or refute the issue of this outstanding debt in Defendant's Counterclaim; thus, no genuine issue of fact exists, and Defendant is entitled to summary judgment as to its Counterclaim.

## CONCLUSION

In light of the foregoing analysis, Defendant's Motion for Summary Judgment against Plaintiff is granted in its entirety. Defendant's Motion for Summary Judgment on its Counterclaim against Plaintiff is also granted in the amount of $2,350.00. This action is terminated.

Date: 6-5-12

JOHN W. DARRAH
United States District Court Judge